LACROIX v. GRAND TRUNK WESTERN
RAILROAD COMPANY.

OPINION OF THE COURT.

1. NEGLIGENCE — GROSS NEGLIGENCE — WILFUL AND WANTON MIS-
CONDUCT.

Gross negligence and wilful and wanton misconduct are not iden-
tical charges against defendant in a tort action.

2. SAME—GROSS NEGLIGENCE—CONTRIBUTORY NEGLIGENCE.

The basis of recovery in all cases of gross negligence is that
the defendant knows, or ought, by the exercise of ordinary
care, to know of the precedent negligence of the plaintiff,
and by his subsequent negligence does plaintiff an injury.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 38 Am Jur, Negligence §§ 47, 48.
[2] 38 Am Jur, Negligence §§ 47, 179.
[3] 38 Am Jur, Negligence §§ 47, 215 et seq.
Application of last clear chance doctrine to cases involving collision
between train and motor vehicle at railroad crossing. 70 ALR2d
9.
[4] 38 Am Jur, Negligence §§ 47, 212, 213.
[5] 38 Am Jur, Negligence §§ 47, 182.
[6] 38 Am Jur, Negligence §§ 47, 174 et seq.
[7] 38 Am Jur, Negligence §§ 231–233.
[8] 38 Am Jur, Negligence §§ 43–48.
[9] 38 Am Jur, Negligence §§ 286, 348
[10] 44 Am Jur, Railroads §§ 509, 510.
Failure of occupants of motor vehicle stalled on railroad crossing
to get out and move to a place of safety as contributory negli-
gence. 21 ALR2d 742.
[11] 44 Am Jur, Railroads § 621 et seq.
Failure of occupants of motor vehicle stalled on railroad crossing
to get out and move to place of safety as contributory negligence.
21 ALR2d 742.
[12–14, 16–18] 44 Am Jur, Railroads § 439.
[14, 18, 19] 44 Am Jur, Railroads § 632.
[15] 20 Am Jur 2d, Costs §§ 87, 88.

3. SAME—GROSS NEGLIGENCE—LAST CLEAR CHANCE.

Gross negligence is also sometimes called discovered negligence, subsequent negligence, wanton or wilful or reckless negligence, discovered peril, last clear chance doctrine, and the humanitarian rule.

4. SAME—GROSS NEGLIGENCE—ANTECEDENT NEGLIGENCE OF PLAINTIFF.

The theory of gross negligence is that the antecedent negligence of plaintiff only put him in a position of danger and was therefore only the remote cause of the injury, while the subsequently intervening negligence of the defendant was the proximate cause.

5. SAME—GROSS NEGLIGENCE—APPLICATION.

There is no occasion to invoke the doctrine of gross negligence to excuse negligence of a plaintiff who is in a position which has become dangerous when he is free from negligence, and the defendant knows, or ought to know, by exercise of ordinary care, of plaintiff's peril, but nevertheless negligently injures him, for in such case there is no negligence of plaintiff to be excused.

6. SAME—GROSS NEGLIGENCE—CONCURRENT NEGLIGENCE.

The doctrine of gross, subsequent or discovered negligence may not be invoked to excuse concurrent negligence of a plaintiff.

7. SAME—COMPARATIVE NEGLIGENCE.

The rule of comparative negligence does not obtain in this State.

8. SAME—WILFUL INJURY.

One who wilfully injures another, or whose conduct in doing the injury is so wanton or reckless that it amounts to the same thing, is guilty of more than negligence.

9. SAME—WILFUL MISCONDUCT—CONTRIBUTORY NEGLIGENCE.

Contributory negligence is no defense in an action where recovery is sought on the theory that the injury was caused by wilful, wanton or reckless misconduct of the defendant, because the act complained of is characterized by wilfulness, and transcends negligence.

10. RAILROADS — AUTOMOBILES — GROSS NEGLIGENCE — LOCOMOTIVE FIREMEN—CONCERN FOR SAFETY.

Concern of fireman on diesel railroad locomotive for his own safety and that of passengers on his train, expressed in testimony by his assertion that he would have warned engineer to stop train farther away from scene of accident with

car stalled on tracks with its headlights shining toward his train, if he could have told that it was a car rather than, as he thought, a locomotive stopped on a siding with its classification lights showing, *held*, to negate a reckless disregard of the rights of others, in action brought by the owner of the automobile for his personal injuries on theory that railroad employees were guilty of reckless misconduct in running into his automobile.

11. Same—Automobiles—Gross Negligence—Evidence—Instructions.

Evidence in action by plaintiff whose car was run over while stalled on railroad track facing down the main line toward an oncoming train some 50 feet west of a highway crossing, which failed to show anything out of the ordinary or unusual in the way the train was being operated prior to the accident, where the locomotive engineer and fireman both testified that they saw the headlights of the car on the track but thought that they were the classification lights or running lights of a locomotive standing on a siding waiting for their train to pass, until it was too late to stop the train without hitting the car, *held*, not to present any proof from which a jury could find that the defendant railroad's employees wilfully injured the plaintiff or that their conduct was so wanton and reckless as to transcend negligence, or to amount to gross negligence in the sense of subsequent negligence; hence, it was not error for trial judge to refuse to charge wanton and wilful misconduct.

12. Same—Trespass Statute.

Railroad trespass statute was applicable to a case where plaintiff sued for personal injuries sustained when defendant's locomotive ran into his car, which was stalled about 50 feet west of highway crossing on the defendant's main line of tracks (CL 1948, § 469.421).

13. Same—Violation of Trespass Statute—Negligence.

Statement by judge in charge to jury that violation of railroad trespass statute is negligence *held*, error (CL 1948, § 469.421).

14. Same—Violation of Trespass Statute—Negligence—Instructions.

Error by trial judge in charging jury that violation of railroad trespass statute is negligence, *held*, harmless in case where this instruction was followed by an instruction that violation of the statute must be the proximate cause of the plaintiff's injuries, a further instruction that plaintiff was privileged to go upon

the railroad tracks to save human life or to protect property, and an instruction on the doctrine of subsequent negligence of the railroad's train crew, and the issues of proximate cause, whether plaintiff was next to the railroad tracks to save human life or to protect his property, and defendant railway's subsequent negligence were all left to jury (CL 1948, § 469-.421).

15. Costs—In Forma Pauperis.

No costs are allowed appellee railroad company upon affirmance of judgment on appeal wherein plaintiff had been allowed by Supreme Court to proceed *in forma pauperis.*

### Separate Opinion.
### Souris, J.

16. Railroads—Trespass Statute—Construction.

*Railroad trespass statute does not purport to establish any standard of conduct or duty of care owed by any person going upon railroad properties to the railroad or to anyone else, but declares the status of persons wrongfully on railroad tracks (CL 1948, § 469.421).*

17. Statutes—Negligence.

*Only when a statute establishes a standard of conduct by a person does its breach constitute negligence* per se, *a presumption of negligence, or* prima facie *guilt of negligence.*

18. Railroads—Trespass Statute—Instructions.

*Instruction to jury that violation of railroad trespass statute constituted negligence was error (CL 1948, § 469.421).*

19. Same—Instructions—Harmless Error—Evidence.

*Error of court in charging jury that violation of railroad trespass statute constituted negligence was harmless error in case where plaintiff's action was founded on allegations of defendant railway's guilt of gross negligence or of wilful and wanton misconduct, of which no proofs were offered, and the failure to offer any proofs of gross negligence or wilful and wanton misconduct was unrelated to the instructional error (CL 1948, § 469.421).*

Appeal from Court of Appeals, Division 2; Quinn, P. J., and McGregor and Watts, JJ., affirming St. Clair, Streeter (Halford I.), J. Submitted March

8, 1967. (Calendar No. 5, Docket No. 51,405.) Decided October 2, 1967.

2 Mich App 151, affirmed.

Declaration by Walter H. LaCroix against Grand Trunk Western Railroad Company, a Michigan corporation, for injuries sustained when plaintiff's car was struck by defendant's train. Verdict and judgment for defendant. Affirmed by Court of Appeals. Plaintiff appeals. Affirmed.

*Peter E. Bradt,* for plaintiff.

*Earl C. Opperthauser,* for defendant.

Adams, J. Following an adverse jury verdict and denial of motion for new trial, plaintiff appealed to this Court as a matter of right on January 22, 1964. The case was assigned to the Court of Appeals and the judgment for defendant was affirmed by that Court (2 Mich App 151). Plaintiff filed an application for leave to appeal to this Court. Leave was granted as was also appellant's motion for leave to proceed in this Court *in forma pauperis.*

Plaintiff claims:

1. It was reversible error for the trial court to instruct the jury that a "violation" of the so-called trespass statute was negligence.

2. It was reversible error for the trial court to refuse to instruct the jury on wilful and wanton misconduct and gross negligence.

The second question will be considered first.

### I.

The Issue of Wilful and Wanton Misconduct and Gross Negligence.

Plaintiff charged defendant with: (1) gross negli-

gence, and (2) wilful and wanton misconduct. The charges are not identical. This has been made clear in the leading Michigan case of *Gibbard* v. *Cursan* (1923), 225 Mich 311. A 13-year-old girl was killed while walking on a paved country highway on her way home from school when she was overtaken and fatally injured by a motor vehicle driven by defendant. Such conduct was charged to be a wanton, wilful, and reckless act. It was urged that the deceased was guilty of contributory negligence as a matter of law. Plaintiff obtained a judgment in the lower court. On appeal, the question of contributory negligence as a defense to a claim of wilful, wanton, and reckless misconduct was examined in this Court. In an opinion by Justice CLARK in which six other members of the Court concurred, Justice FELLOWS concurring only in the result, it was said (pp 318–321):

"In addition to instructing the jury on the theory of claimed negligence of defendants and of claimed contributory negligence of plaintiff, the trial judge defined gross negligence, so-called, to be a wanton, wilful or reckless act, or a wanton, wilful, and reckless failure to perform a duty to another, and said, after stating plaintiff's claims as to facts:

" 'If you find by the preponderance of the evidence in this case that these are the facts and that they show gross negligence—if you find that they show gross negligence on the part of the driver, and only slight negligence on the part of the girl, or less negligence than that on the part of the driver, * * * then the plaintiff is entitled to a recovery in this case.'

"The quoted excerpt is said to be error as stating a rule of comparative negligence, not recognized in this State, and it is urged that no case of gross negligence was made out. In the ordinary case of negligence, if the plaintiff has been guilty of negligence, contributing to the injury for which the action is

brought, he cannot recover. It is to avoid this rule and to excuse contributory negligence of a plaintiff that the doctrine of gross negligence is usually invoked.

"When will gross negligence of a defendant excuse contributory negligence of a plaintiff? *In a case where the defendant, who knows, or ought, by the exercise of ordinary care, to know, of the precedent negligence of the plaintiff, by his subsequent negligence does plaintiff an injury. Strictly, this is the basis of recovery in all cases of gross negligence.* 20 RCL p 145. Such gross negligence is also sometimes called discovered negligence, subsequent negligence, wanton or wilful or reckless negligence, discovered peril, last clear chance doctrine, and the humanitarian rule. Other misconduct, different in kind, is also generally and incorrectly known as gross negligence, as we shall see later. *Richter* v. *Harper,* 95 Mich 221; *Kelley* v. *Keller,* 211 Mich 404 (20 NCCA 228); *Fike* v. *Railroad Co.,* 174 Mich 167; *Knickerbocker* v. *Railway Co.,* 167 Mich 596; *Buxton* v. *Ainsworth,* 138 Mich 532 (5 Ann Cas 146).

"The theory of gross negligence is that the antecedent negligence of plaintiff only put him in a position of danger and was therefore only the remote cause of the injury, while the subsequently intervening negligence of the defendant was the proximate cause. Cooley on Torts (2d ed), p 674; *Labarge* v. *Railroad Co.,* 134 Mich 139 (14 Am Neg Rep 575).

"If the plaintiff is in a position which has become dangerous and he is free from negligence, and the defendant knows, or ought by the exercise of ordinary care to know, of plaintiff's peril, and nevertheless negligently injures him, there is no occasion to invoke the doctrine of gross negligence to excuse negligence of plaintiff, for there is no negligence of plaintiff to be excused. *Schnurr* v. *Railway,* 222 Mich 591.

"If the negligence of a plaintiff is concurrent with the negligence of a defendant, the rule as to antecedent negligence of plaintiff and subsequent negligence of defendant does not apply. The doctrine of gross, subsequent or discovered negligence may not be invoked to excuse concurrent negligence of a plaintiff. *Labarge* v. *Railroad Co., supra; Krouse* v. *Railway Co.*, 215 Mich 139; 1 Thompson on Negligence, § 208; 7 LRANS 132, 152; 17 LRANS 707; 19 LRANS 446; 27 LRANS 379; Huddy on Automobiles (5th ed), p 610. And see *Richter* v. *Harper*, 95 Mich 221, at page 225.

"Nor can it be said that because a defendant's negligence is great, of a comparative or superlative degree, it may therefore be called 'gross,' and that a plaintiff's contributory negligence may, for that reason alone, be excused. The rule of comparative negligence does not obtain in this State. *Richter* v. *Harper, supra; Labarge* v. *Railroad Co., supra.*

"*If one wilfully injures another, or if his conduct in doing the injury is so wanton or reckless that it amounts to the same thing, he is guilty of more than negligence. The act is characterized by wilfulness,* rather than by inadvertence, *it transcends negligence* —is different in kind. Where recovery is sought on the theory that the injury was caused by wilful, wanton or reckless misconduct of a defendant, as distinguished from negligence, there is no more reason for permitting the defense of contributory negligence than in a case of assault and battery. True, such misconduct in this State and elsewhere usually has been called negligence, the word being qualified by such adjectives as gross, wanton, reckless, or wilful, but this is incorrect and has a tendency to mislead." (Emphasis supplied.)

The distinction in terms and in conduct pointed out in the *Gibbard Case* has continued to be followed by this Court. In the case of *Union Trust Co.* v. *Detroit, G. H. & M. R. Co.* (1927), 239 Mich 97 (66 ALR 1515), a directed verdict for the defendant was

affirmed, it appearing that plaintiff's decedent was a passenger in an automobile which went upon the railroad tracks after going around a gate and moving to the wrong side of the street where it was struck by a slowly moving boxcar. It was claimed the defendant was guilty of gross negligence and that the rule of contributory negligence should not be applied. The Court in passing on this contention said:

"We do not have gross negligence in the sense of great or much negligence because that would introduce into our law the doctrine of comparative negligence which is foreign to this jurisdiction, and * * * while wilful and wanton acts are frequently designated as gross negligence, such designation is a misnomer, because such wilful and wanton acts are not negligence at all. Upon this record there is no case made of subsequent negligence, nor wilful or wanton acts of defendant or any of its servants."

The case of *Finkler* v. *Zimmer* (1932), 258 Mich 336, was an action brought by the administrator of an estate. Plaintiff's decedent had died of injuries suffered in a collision of automobiles at an intersection of highways. The opinion of this Court re-examined the rules announced in *Gibbard* and reaffirmed their statements. The *Finkler Case,* it should be noted, involved the guest statute.

In the case of *Sun Oil Company* v. *Seamon* (1957), 349 Mich 387, Justice Talbot Smith wrote at length on contributory negligence and the doctrine of intentional harm. After citing and quoting extensively from other cases, he concluded (p 411):

"The reasoning behind these cases is clear: Wanton misconduct is a different kind of offense than ordinary negligence, even though it be gross. Fault is involved in both, but in the one the fault of the callous, the brutish, the quasi-criminal, in the other

the human frailty of lack of care, of inattention, of diversion. These are faults of different hues in the spectrum of human conduct and so the courts have treated them. Our Court should do likewise."

See *Labarge* v. *Pere Marquette R. Co.* (1903), 134 Mich 139 (14 Am Neg Rep 575), 141. See *Willett* v. *Smith* (1932), 260 Mich 101, 104; and *McLone* v. *Bean* (1933), 263 Mich 113, 115, which were cases arising under the Michigan guest statute.

See *Nunn* v. *Drieborg* (1926), 235 Mich 383, 386, where the Court's inquiry as to malice and wilful act was directed to the intent of congress in creating the exceptions in section 17 of the bankruptcy act (11 USC § 35). See, also, *Cogswell* v. *Kells* (1940), 293 Mich 541, which involved the effect of discharge in bankruptcy as to plaintiff's judgment for personal injuries.

Plaintiff's requests to charge were supported by citation of the following Michigan cases: *Battishill* v. *Humphreys,* 64 Mich 514; *Gibbard* v. *Cursan, supra; Willett* v. *Smith, supra; Schneider* v. *Draper,* 276 Mich 259; *Teeter* v. *Pugsley,* 319 Mich 508; *Davis* v. *Hollowell,* 326 Mich 673 (15 ALR2d 1160); 326 Mich 607, which must be a bad citation since the case (*West Bloomfield Company* v. *Haddock,* 326 Mich 601) deals with reciprocal negative easements; and *Deadman* v. *Detroit, J. & C. R. Co.,* 223 Mich 228.

*Gibbard* has been discussed. *Willett, Schneider* and *Davis* are guest passenger cases. This is not a guest passenger case and the guest passenger act or cases thereunder are not pertinent to the facts or legal issue in this case. While the guest passenger cases may be helpful (as also the cited bankruptcy cases), we do not regard them as controlling in determining the correct concepts of gross negligence and wilful and wanton misconduct at common law.

In *Battishill,* a little girl 2 years and 7 months old, while playing on the railroad track, was run over by a train of freight cars being pulled by an engine and tender running backwards. There was testimony that the view down the track was unobstructed. The members of the train crew testified that they were maintaining a lookout but that they never saw the child. Commenting on this testimony, the Court said (p 521):

"That they did not see it under the circumstances is conclusive proof that they did not keep a proper lookout. As well might the train have been run with no one in charge. It would have been no more reckless and more culpable than, with four men in charge, to run over this child, who was upon the track in plain sight, without seeing it. It shows in these men a reckless indifference to their duty under the situation and surroundings."

The Court concluded that the train crew was guilty of "reckless negligence."

In the case of *Teeter* v. *Pugsley* the facts showed that the plaintiff was injured by a shot from a gun recklessly discharged by the defendant. This Court held that the defenses of contributory negligence and assumption of risk were not permissible in an action for wilful injuries or injuries due to defendant's wanton or reckless conduct and cited the *Gibbard Case.*

*Deadman* was a case of directed verdict against the plaintiff in which the motorman of an interurban abandoned control of the car and allowed it to crash into plaintiff's stalled truck. The Court said the record presented a case of defendant's wanton and wilful negligence (last clear chance) and that plaintiff's negligence was a question for the jury.

We conclude that *Gibbard's* definitions of gross negligence and wanton and wilful misconduct are

the applicable common law in Michigan today. It remains to review the testimony to test plaintiff's claim that it displays wilful and wanton misconduct or gross negligence by defendant's employees.

On April 25, 1958, Carl Harmon, the fireman on the diesel engine, had started his run at Battle Creek. He sat on the left side of the cab; the engineer sat on the right side. Before leaving Battle Creek, the engineer had received orders to slow down the train at West Emmett. Passenger train No. 14, on which Harmon was the fireman, was eastbound. It was due at Imlay City in Lapeer county at 3:25 a.m. Proceeding eastward from Imlay City, the train came to Capac in St. Clair County; Emmett or West Emmett; Goodells (scheduled arrival 3:46 a.m.); Sunnyside road; West Tappan, near mile post 329 (scheduled arrival 3:51 a.m.); and Bartlett road crossing. The train was running 4 minutes behind schedule at West Tappan, due to the slow order for the train through West Emmett. The night had been cool and dark but clear.

After the train passed through West Emmett, its speed was resumed. When the train was a mile and a half to two miles to the west of West Tappan, Harmon saw lights ahead and mentioned to the engineer that the railroad must be running an extra that night. By an extra, he meant a freight or passenger train which was called an extra train. At the time, he mentioned to the engineer that there was an extra "in the hole" waiting for the single track. By this he meant that the extra train was standing on the westbound line or siding which ended a short distance west of the Bartlett road crossing and that the train, or extra, was waiting for the single track to be cleared. The engineer responded that it looked like business was picking up.

About one second or a second and a half later, Harmon realized that the lights were from a car on the track and yelled to the engineer, "Soak her, it's a car." The engineer already had hold of the brake valve and had put the brakes in emergency. It was Harmon's judgment that the engine was approximately 700 feet from the car at the time the brakes were applied in emergency. At that point he could not see anything past the headlights of the car which were shining toward him. His seat in the cab was 10 or 11 feet above ground. As soon as the engine was close enough to the automobile so that the car lights were low down and the headlight of the engine cast a beam over the top of the car, Harmon had an instant in which he could see beyond the car. He saw a person with the appearance of a man standing just north of the north rail of the westbound track. At the instant of impact he could not see anything more because dirty water from the car radiator and particles of the car were flying all around.

As the train came to a stop, Harmon grabbed his flashlight and started back. The car was found lying in a ditch along the railroad tracks. LaCroix was found in the ditch, almost submerged in water. LaCroix was given artificial respiration by one of the train crew. Harmon proceeded up the track toward the Bartlett road crossing. He found the gasoline tank from the car alongside the road. He found a flashlight lying in the road. The drive shaft and the transmission from the car were in the middle of the eastbound main line.

On May 1, 1958, Harmon gave a written statement of his version of the accident in a report to the trainmaster's clerk. The following additional facts appear in the statement. Passenger train No. 14 consisted of 8 cars and was traveling at a speed of approximately 70 miles per hour at a point 1-1/2 to

2 miles west of the Bartlett road crossing. The train traveled approximately 16 telephone poles east of the Bartlett road crossing before coming to a stop.

Harmon amplified his statement concerning the 16 telephone poles under cross-examination by the railroad's attorney. He stated that when the train stopped the engineer got off and examined the front of the engine to ascertain if there was any debris from the car on the engine or any damage to the engine which would prevent it from continuing to Port Huron. The engineer found some debris on the front of the engine which he removed and dropped on the right-of-way. The train was backed up to the crossing. When the train continued toward Port Huron, the engineer and Harmon looked for the debris. They found it 16 telephone poles from the crossing.

Harmon testified that he estimated the distance from the crossing to the front end of the engine when the train stopped to be approximately 2,000 feet. He subsequently learned that measurements were taken which showed it to be 1,980 feet. He estimated the total stopping distance of the train to have been 2,800 feet.

During the trial, plaintiff's counsel tried to establish that the engine crew did not maintain a proper lookout and that the fireman and engineer should have determined that the lights on the track were those of an automobile and not a train standing in the hole. Harmon explained the reason the headlight on the engine did not show over the top of the LaCroix car was because the car had the appearance of being astraddle the rail with the wheels up on the ties and the rear end of the car down between the main line, or slightly lower, thereby throwing the light beams of the car upward from it. He testified that he first determined it was a car on the

track when the engine was about 800 feet away.
He said:

"If I could have told it any farther away, I certainly would have yelled, soak her. It would be only a safety measure to my own life."

Later, while under cross-examination by defendant's attorney, Harmon said:

"*A.* Our signals showed clear all the way through.

"*Q.* Did this serve to confirm what appeared to you to be classification lights of a train?

"*A.* Yes, it did.

"*Q.* Standing in the clear?

"*A.* I had no reason to think otherwise.

"*Q.* Mr. Harmon, if you would have thought at any time whether you saw these lights from a mile and a half or two miles or how far back you saw these lights, if you would have thought or suspicioned for 1 second that these lights were anything but a train in the hole which you had experienced there at times before, what would you have done and why?

"*A.* I would have taken immediate steps to stop that train at once. If I had detected that it was a foreign object of any kind on that track, I would not [want] to take a chance of hitting it, of endangering the lives of whoever might be in it, but not only that any foreign object from an impact like that could get under the wheels, between the wheels and the rail, just enough to lift the flange of the wheel above the rail and derail it. It would derail the whole train at that speed, endangering my own life as well as all the patrons in the train behind us, behind our engine."

Harmon's concern for his own safety and that of the passengers "negates a reckless disregard of the rights of others." *Standard Oil Company* v. *Ogden & Moffett Company* (CA 6, 1957), 242 F2d 287, 291.

Andrew Gray, the engineer on the passsenger train, testified that he began to work for the Grand Trunk Railroad as a fireman in 1914. Gray confirmed the testimony of Harmon that he first saw the lights when the engine was about a mile and a half from the Bartlett road crossing. He related that some conversation was had with Harmon about business picking up and that the railroad was running an extra.

Gray testified that as his engine got closer to the LaCroix car he thought the headlights on the LaCroix car were running lights on a locomotive. He thought the locomotive was over on the westbound track. He estimated that his engine was about 800 feet away at that time. He described running lights as being lights under the cab for the purpose of spotting an engine or train along the railroad which would show up at the time of getting fuel oil or water. These lights do not show ahead of the engine. They show down. Gray testified that about the time he was blowing the second whistle for the Bartlett road crossing he came to the conclusion that the lights ahead were not classification lights but were running lights on a locomotive. The standard whistle signal for a highway crossing is 2 long, a short and a long blast. Gray had just about gotten the second long blast done when he realized that there was a car on the track ahead and dropped his hand to the brake valve and put the brakes in emergency. He fixed the place where he began to sound the whistle as being about 80 rods—a quarter of a mile—from the Bartlett road crossing. The bell was ringing automatically.

The fireman, Harmon, and the engineer, Gray, it may be noted, were called as plaintiff's witnesses and not for cross-examination under the statute.[1]

---

[1] See CL 1948, § 617.66 (Stat Ann § 27.915).—Reporter.

Harry Neal, a deputy sheriff, went to the scene while the train was still there. Neal made a report of the accident and was asked concerning his listing therein of LaCroix as a pedestrian standing on the crossing. He said that this was done from information given him. Neal later in his testimony was asked if he talked to Harmon at the scene. He said that he did and that Harmon told him he saw a man standing on the crossing.

The entire evidence in this case—whether testimony of witnesses, exhibits or other physical evidence—fails to reveal anything out of the ordinary or unusual in the way train No. 14 was being operated prior to the accident.

From this lengthy review of the testimony in the case, it is evident that there is no proof from which a jury could find that defendant wilfully injured LaCroix or that the conduct of defendant's employees was so wanton and reckless as to transcend negligence. The judge did not err in refusing to charge as to wanton and wilful misconduct. *Holmes* v. *Detroit, G. H. & M. R. Co.* (1912), 171 Mich 633. Likewise, since the presence of LaCroix was not known to defendant's employees until almost the very moment of impact with his car, there is no proof of gross negligence from which a jury could make a finding of the same. In any event, as will be seen later, the judge did charge as to subsequent negligence. The trial judge did not err in refusing to give any other charge as to gross negligence.

## II.

### The Charge as to the Trespass Statute.

The trespass statute, PA 1917, No 245 (CL 1948, § 469.421 [Stat Ann § 22.1231]), in 1958 read as follows:

"No person shall have authority to walk, ride, drive or be upon or along the tracks within the right-of-way of any railroad company operating its lines within the confines of any city or village of this State, or to go upon or cross such tracks or right-of-way at any place other than a public or private crossing: Provided, That the provisions of this act shall not apply to passengers on trains, employes or licensees of a railroad company while engaged in the performance of the duties of their employment or acting pursuant to the license, or to any person going upon such right-of-way or tracks to save human life or to protect property, or to any person going or being upon or in the station grounds or depot of any such railroad company as a passenger or for the purpose of transacting business therewith, or for any other purpose, or to any person, members of his family, or his employees going upon such right-of-way or tracks for the purpose of crossing from 1 part to another of a farm he may own or lease, where such farm lies on both sides of the right-of-way."

After the close of proofs and pursuant to request of defendant, the trial judge instructed the jury:

"A Michigan statute states no person shall have authority to go upon or cross railroad tracks or right-of-way at any place other than a public or private crossing provided that the provisions of this act shall not apply to any person going upon such right-of-way or tracks to save human life or to protect property. A violation of a statute is negligence."

Plaintiff contends the statute prohibits nothing and makes no act unlawful, nor does it provide any punishment, and that it is, therefore, impossible to "violate" such statute. Plaintiff's case was pled upon the primary theory that defendant owed 13 different duties to him and that by breach of those duties "defendant thereby became guilty of

gross negligence and wilful and wanton misconduct."
In addition to plaintiff's pleaded theory of wilful
and wanton misconduct, there developed upon the
trial of this case a claim of negligence and of last
clear chance. Consequently, plaintiff's negligence
became an issue as to whether it was a proximate
cause of the accident.

It was shown upon trial that prior to the accident
plaintiff had been drinking. He arrived at a bar
shortly after midnight, drank 3 to 5 bottles of beer,
and played shuffleboard with 2 men until around
2:30 a.m. when he went to the home of 1 of the
men to drink and play records. They drank what
beer was in the house, possibly some more beer
from a supply LaCroix had in his car. After they
were there a while, plaintiff asked the friend to
go to LaCroix's car and get a bottle of whiskey.
LaCroix alone drank all the contents of the bottle.
After this, LaCroix asked directions to his house
and then left. He ended up on the railroad track,
nowhere near his home. To get to the railroad
track, he had to go past several main streets and
travel a total distance of about 5-1/2 miles. When
the investigating police officer got no closer than 2
feet from LaCroix, he could smell the odor of beer
and alcohol on his breath. Mr. LaCroix's memory
of this event was erased by a trauma. He has no
present knowledge of how his injuries occurred or
how his automobile became stuck on the railroad
track.

PA 1917, No 245[2] in its entitling clause is not
restricted to cities and villages, but states:

"An act to prevent trespassing on the rights of
way and tracks of railroad companies within this
State."

---

[2] CL 1948, § 469.421 (Stat Ann § 22.1231)—Reporter.

The language of the act, taken as a whole, particularly the farm cróssing exclusion of owners, et cetera, of à farm lying on both sides of the right-of-way, leads us to conclude that the trespass statute was applicable to this case. The statute, however, is not a penal one. It is little more than a refinement of the common law as to who shall or shall not be considered to be a trespasser. Consequently, for the judge to state, "A violation of *a* statute is negligence," was erroneous. The judge immediately followed this statement by saying:

"If you find that Mr. LaCroix violated this statute and that his negligence in so doing was a proximate cause of his injuries, there can be no recovery in this case. If you find that Mr. LaCroix violated this statute but that such violation was not a proximate cause of his injuries, his violation of the statute would not prevent his recovery of damages in this case if you find the defendant to have been negligent and that defendant's negligence was a proximate cause of plaintiff's injuries.

"A person may go upon or cross railroad tracks or right-of-way at a public or private crossing and may go upon such right-of-way or tracks to save human life or to protect property."

While Harmon's testimony would indicate that LaCroix was on the crossing at the time of the accident, plaintiff introduced testimony that defendant's claim agent had stated LaCroix was standing alongside his car waving his arms just before the accident. Since the judge carefully left for determination by the jury the issue of proximate cause and the issue as to whether plaintiff was where he was to save human life or to protect his property, the jury could not have been misled and the court's error must be deemed to have been harmless.

Plaintiff's requests to charge totalled 51. Defendant's requests to charge totalled 67. While in some

cases modifications were made by the trial judge, the court's instructions to the jury were taken almost entirely from either plaintiff's requests or defendant's requests.  The trial court gave a total of 71 instructions. .

In this connection it should be noted that, viewing the court's charge as a whole, plaintiff was allowed to go to the jury not only on the issue of defendant's negligence and proximate cause but also on the issue of defendant's subsequent negligence.  The court, in accordance with plaintiff's request No. 35, charged as follows:

"Whether Mr. LaCroix's injuries were due solely to the negligence of defendant's engine crew without contributory negligence on his part, or, on the other hand, were due to the subsequent negligence of the engine crew after Mr. LaCroix's negligence had placed him in a position of peril and then ceased to operate as a proximate cause of the ensuing injuries, in either event Mr. LaCroix would be entitled to recovery.  If defendant's engine crew discovered, or in the exercise of due care should have discovered, Mr. LaCroix in a position of peril in sufficient time to be able by the exercise of due care and diligence in the use of the means at hand to avoid injury to him but failed to exercise such care and use such means with the result that he was injured by reason of such neglect of the engine crew, then the railroad is liable to him for damages regardless of whether he came into such position of peril without fault or negligence on his part or through his own negligence [in violating a statute or otherwise] which had ceased to operate as a proximate cause of the ensuing injury."  (It particularly is to be noted that the portion in brackets was added by the trial judge to plaintiff's request.)

Viewed in its entirety, we conclude, as did the Court of Appeals (p 156), that:

"The court's instructions to the jury relative to the trespass statute  *   *   *  are clear, fair, proper, and amply supported by the record."

Affirmed. No costs, plaintiff having been allowed by order of this Court to proceed *in forma pauperis*.

DETHMERS, C. J., and KELLY, T. M. KAVANAGH, O'HARA, and BRENNAN, JJ., concurred with ADAMS, J.

SOURIS, J. (*concurring in affirmance*). Plaintiff's case was based upon a theory that defendant was guilty of gross negligence or of wilful and wanton misconduct. His declaration did not charge simple negligence. This is confirmed by his declaration and by his concise statement of facts submitted in support of his application for leave to appeal to this Court. Mr. Justice ADAMS has written, and I agree, that plaintiff's proofs would not have supported a jury verdict finding defendant guilty of gross negligence or of wilful and wanton misconduct.

The circuit judge's instruction to the jury on the trespass statute was inapplicable to this case and should not have been given. The statute, quoted at page 434 of Justice ADAMS' opinion, does not purport to establish any standard of conduct or duty of care owed by any person going upon such railroad properties to the railroad or to anyone else.[1] Rather, the statute declares the status of persons wrongfully on railroad tracks.[2] It is

---

[1] *Cf.*, for example, the prima facie case of negligence that arises in a rear-end collision (CLS 1961, § 257.402 [Stat Ann 1960 Rev § 9.2102]) or the rule of conduct imposed by the assured clear distance statute (CLS 1961, § 257.627 [Stat Ann 1960 Rev § 9.2327]).

[2] *Cf.*, for example, the New Jersey railroad trespass statute, which provides, in part, "If any person shall be injured by an engine or car while walking, standing or playing on a railroad or by jumping on or off a car while in motion [such person] shall be deemed to have contributed to the injury sustained and shall not recover

only when a statute establishes such standards of conduct[3] that its breach constitutes, by our precedent decisions, negligence *per se,*[4] a presumption of negligence,[5] or *prima facie* guilt of negligence.[6] Accordingly, the circuit judge erred in instructing the jury as he did with reference to the trespass statute.

Notwithstanding such error, however, we would not be justified in reversing this judgment. Plaintiff's right to prevail depended upon his proof of defendant's guilt of gross negligence or of wilful and wanton misconduct. His failure to offer any such proofs was unrelated to the instructional error.

Accordingly, I cast my vote to affirm.

Black, J., did not sit.

---

therefor any damages from the company owning or operating the railroad." (Section 55 of the general railroad act of New Jersey, as quoted in *Kowaleski* v. *Pennsylvania R. Co.* [CA 3, 1939], 103 F2d 827, 829.) (Now NJSA 48:12–152.—Reporter.)

3 2 Restatement, Torts (Second) § 286, the predecessor of which is referred to with approval twice in our reports (*Richardson* v. *Grzeszak* [1959], 358 Mich 206, 234 [concurring opinion], and *Patzer* v. *Bowerman-Halifax Funeral Home* [1963], 370 Mich 350, 353), sets forth the following qualifications as to when a standard of conduct defined by legislation may be adopted by a court:

"The court may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part
(a) to protect a class of persons which includes the one whose interest is invaded, and
(b) to protect the particular interest which is invaded, and
(c) to protect that interest against the kind of harm which has resulted, and
(d) to protect that interest against the particular hazard from which the harm results."

The Michigan statute does not declare such a standard of conduct, but, rather, declares a status. See *Antonio* v. *Long Island R. Co.* (1942), 265 App Div 874 (38 NYS2d 42), affirmed (1943), at 290 NY 718 (49 NE2d 1002); and *Bain* v. *New York Central Railroad* (CA 2, 1965), 342 F2d 801.

4 *Annis* v. *Britton* (1925), 232 Mich 291, and *Cookson* v. *Humphrey* (1959), 355 Mich 296.

5 *Hanna* v. *McClave* (1935), 271 Mich 133.

6 *Noonan* v. *Volek* (1929), 246 Mich 377.