MUELLER v FRANKENMUTH MUTUAL INSURANCE COMPANY

Docket No. 108206. Submitted June 4, 1990, at Lansing. Decided July 17, 1990.

Eugene W. Mueller, Vernon R. Mueller, and Pamela Rae Baker brought an action in the Tuscola Circuit Court, Patrick R. Joslyn, J., against Frankenmuth Mutual Insurance Company and others seeking to recover for damages to their property caused by flooding from burst water pipes which froze due to the termination of electrical service to the property. The trial court granted summary disposition to plaintiffs on the issue of Frankenmuth's liability under their contract of insurance and the jury returned a verdict determining plaintiffs' damages to be $25,000. Frankenmuth appealed.

The Court of Appeals *held:*

1. The damages were covered under the policy issued to plaintiffs. The term "explosion" as used in the applicable policy provision includes the bursting of water pipes due to freezing. Summary disposition in favor of plaintiffs on the issue of liability was proper.

2. Sufficient evidence was presented to justify the verdict on damages.

3. The trial court properly allowed plaintiffs to use the deposition testimony of a witness who was in California at the time of trial and would not return.

Affirmed.

1. INSURANCE — JUDICIAL CONSTRUCTION.

Words in insurance policies should be interpreted according to their commonly understood meaning; such words are given their ordinary and plain meaning so as to avoid a technical or strained construction.

2. WITNESSES — DEPOSITIONS — COURT RULES.

The Michigan Court Rules effective prior to December 1, 1989,

REFERENCES

Am Jur 2d, Depositions and Discovery § 183; Insurance §§ 276, 277, 484.

Coverage of clause of fire policy insuring against explosion. 28 ALR2d 995.

allowed for the use of deposition testimony at trial where the witness was more than fifty miles from the place of trial unless the absence of the witness was procured by the party offering the deposition (MCR 2.308[A][1][c][iii]).

*Lambert, Leser, Dahm, Giunta, Cook & Schmidt, P.C.* (by *Peter F. Dahm*), for plaintiffs.

*Zimostrad & Zimostrad, P.C.* (by *Eric W. Zimostrad*), for Frankenmuth Mutual Insurance Company.

Before: SAWYER, P.J., and MICHAEL J. KELLY and MURPHY, JJ.

PER CURIAM. In this action on an insurance policy, the jury returned a verdict in favor of plaintiffs determining their damages to be $25,000. The trial court had previously granted summary disposition in favor of plaintiffs on the issue of liability. Frankenmuth Mutual Insurance Company (hereinafter defendant) now appeals and we affirm.

Plaintiffs owned a rental property located in Reese, Michigan. On December 20, 1984, the tenants then in possession, Dennis and Linda Varner, who were preparing to move out, contacted The Detroit Edison Company to have the electricity billing changed from their name to that of plaintiff Baker, in whose name the billing was prior to their moving into the house. The Varners moved out on December 22, 1984. Some time during the following week, plaintiff Vernon Mueller went to the house, inspected it, and found no damage.

On February 18, 1985, Vernon Mueller received a call from a real estate agent about water running from the roof of the house. Upon investigation, he discovered severe flooding and flowing water, which he turned off immediately. The next

day, he contacted plaintiffs' insurance agent, defendant Charles Bender, and inspected the house again, finding extensive damage. When he attempted to heat the house, he discovered that no electricity was running to the property. Thereafter, plaintiffs submitted a claim with defendant Frankenmuth, which was denied.

Plaintiffs thereafter commenced the instant action. Defendant Frankenmuth takes the position that damages arising from flooding because of burst water pipes due to freezing are not covered under the policy issued to plaintiffs. As noted above, the trial court granted summary disposition on the issue of defendant's liability to plaintiffs under the policy and only the issue of damages was submitted to the jury.

On appeal, Frankenmuth first argues that the trial court erred in determining that plaintiffs' loss was covered under the insurance policy. We disagree. First, we note that the parties are essentially in agreement on the basic facts of this case: The damage to the property was caused by flooding from burst water pipes which froze due to the termination of electrical service to the property. Accordingly, summary disposition would be appropriate since the only question involved on the issue of liability is the appropriate construction of the insurance contract, which is a question of law for the court. *Automobile Club Ins Ass'n v Page,* 162 Mich App 664, 667; 413 NW2d 472 (1987).

The "perils insured against" section of the insurance policy issued by defendant to plaintiffs provides in pertinent part as follows:

> We insure for direct loss to the property covered caused by:
>
> *    *    *
>
> 1B. Internal Explosion, meaning explosion occur-

ring in the dwelling or other structure covered on the Described Location or in a structure containing personal property covered.

Explosion does not mean:

a. electric arcing;

b. breakage of water pipes; or

c. breakage or operation of pressure relief devices.

This peril does not include loss by explosion of steam boilers, or steam pipes, if owned or leased by you or operated under your control.

When a Premium for Extended Coverage is shown in the Declarations, Perils 2 through 7 are made part of Perils Insured Against.

\* \* \*

3. Explosion.

This peril does not include loss by explosion of steam boilers or steam pipes, if owned or leased by you or operated under your control.

*This peril replaces Peril 1B.* [Emphasis added.]

Defendant argues that plaintiffs' burst water pipes are not covered since peril 1B specifically excludes "breakage of water pipes" from the definition of "explosion." However, peril 1B is not applicable to the case at bar. As the policy explicitly provides, when a premium for extended coverage is paid, perils 2 through 7 are included in the perils insured against. Furthermore, peril 3, which also deals with explosion, explicitly replaces peril 1B when extended coverage is purchased. The policy declaration sheet issued by defendant to plaintiffs for the subject property clearly lists "extended coverage" being included for a premium of $43 for the policy year during which plaintiffs' loss occurred. Since plaintiffs had purchased extended coverage, peril 1B is inapplicable to the case at bar, having been replaced by peril 3 by the explicit terms of the contract. Accordingly, it is necessary

to determine whether the term "explosion" under peril 3 would include burst water pipes.

Whether the term "explosion" does include the bursting of water pipes due to freezing does not appear to have been addressed in any prior published opinion of a Michigan court.[1] While the parties refer us to decisions from foreign jurisdictions concerning whether the bursting of water pipes due to freezing constitutes an explosion, we believe that the answer to this question can be divined by looking at the ordinary meaning of the word "explosion" and to the policy itself without referring to the decisions of those other courts.

First, it is logical to conclude that the explosion peril insured against under peril 3 must be broader than the "internal explosion" peril insured against in peril 1B or else it would be meaningless to include peril 3 in the extended coverage provisions. Furthermore, we note that peril 1B explicitly states what does not come within the meaning of "explosion" as used in that peril, including electric arcing, breakage of water pipes, breakage or operation of pressure relief devices, and explosion of steam boilers or steam pipes. Peril 3, however, only excludes the explosion of steam boilers or steam pipes. Since defendant saw fit to specifically exclude electric arcing, breakage of water pipes, and breakage or operation of pressure relief devices under peril 1B, its failure to specifically exclude those under peril 3 leads to the conclusion that it intended to include those items within the meaning of "explosion" under peril 3. Thus, the language of the policy lends itself to the conclusion that coverage for the breakage of water pipes is one of the perils for

---

[1] The single case cited by defendant, *Reynolds v Great American Ins Co of New York,* 334 Mich 1; 53 NW2d 594 (1952), is not on point.

which coverage is obtained under peril 3 by the purchase of extended coverage.

Next, the term "explosion" as used in peril 3 is not defined, beyond the provision that it does not include the explosion of steam boilers or steam pipes. Words in insurance policies should be interpreted according to their commonly understood meaning; that is, words are given their ordinary and plain meaning so as to avoid a technical or strained construction. *Allstate Ins Co v Tomaszewski,* 180 Mich App 616, 619; 447 NW2d 849 (1989). See also *Allstate Ins Co v Freeman,* 432 Mich 656, 698-699; 443 NW2d 734 (1989).

*The Random House College Dictionary* (rev ed, 1984), p 466, defines "explode" as follows:

> 1. to expand with force and noise because of rapid chemical change or decomposition, as gunpowder, nitroglycerine, etc. (opposed to *implode*). 2. *to burst violently* with a loud report, as a boiler from excessive pressure of steam. 3. *to burst forth violently* or emotionally, esp. with noise, laughter, violent speech, etc. 4. *Phonet.* (of plosives) to terminate the occlusive phase with a plosion. Cf. implode (def. 2). . . . 5. to cause (gunpowder, a boiler, etc.) to explode. 6. to discredit or disprove: *to explode a theory.* 7. *Phonet.* to end with plosion. 8. *Obs.* to drive (a player, play, etc.) from the stage by loud expressions of disapprobation. [Emphasis changed.]

It should be noted that two of the definitions of "explode" include the infinitive "to burst." Similarly, the *Random House* definition of "explosion" includes a reference to "bursting":

> 1. the act or an instance of exploding; a violent expansion or bursting with noise, as of gunpowder or a boiler. 2. the noise itself. 3. a violent outburst, as of laughter, anger, etc. 4. *Phonet.* plosion. [*Id.*]

Finally, we should briefly dismiss defendant's argument regarding coverage available under other policies issued by it. The policy issued to plaintiffs was a "Dwelling Policy 1" (DP-1). According to defendant, losses relating to frozen water pipes were covered under DP-2 and DP-3 policies, but not under DP-1 . However, what coverages may be available under DP-2 and DP-3 policies is not at issue in this appeal. Rather, we need only concern ourselves with whether burst water pipes due to freezing come within peril 3 of the DP-1 policy at issue here.

For the reasons stated above, we conclude that the term "explosion" as used under peril 3 of the policy includes the bursting of water pipes due to freezing. Accordingly, the trial court correctly granted summary disposition in favor of plaintiffs on the issue of liability.

Defendant next argues that the jury verdict on damages was based upon conjecture and speculation and that defendant should have been granted a directed verdict in its favor. We, however, agree with the trial court that plaintiff presented sufficient evidence to justify the jury's returning a verdict determining the damages to have been $25,000.

Finally, defendant argues that the trial court erred in allowing plaintiffs to use the deposition testimony of a witness rather than requiring the witness to testify in person. The witness, James Gay, was in California at the time of trial, and had been contacted prior to trial by plaintiffs' counsel. Gay informed counsel that he was aware that he was under subpoena but that he did not intend to return to Michigan for trial. Gay's deposition was admissible under the provisions of MCR 2.308(A)(1) (c)(iii), which was effective at the time of trial, which allowed for the use of depositions where the

witness was more than fifty miles from the place of trial unless it appears that the absence of the witness was procured by the party offering the deposition. Since there is no indication that plaintiffs procured Gay's absence from trial, Gay's deposition was admissible at trial under the provisions of the court rules as they existed at the time of trial.

Affirmed. Plaintiffs may tax costs.