*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DEARBORN HILLS CIVIC ASSOCIATION, INC.,

UNPUBLISHED
April 28, 2022

Plaintiff-Appellee,

v

No. 354905
Wayne Circuit Court
LC No. 18-016180-CH

MALIK MERHI and RANA MERHI,

Defendants-Appellants.

Before: LETICA, P.J., and REDFORD and RICK, JJ.

PER CURIAM.

In this dispute over the application of restrictive covenants to a residential home, defendants, Malik Merhi and Rana Merhi (the Merhis), appeal by right the trial court's orders compelling them to remove a fence from their property and to replace stone siding that they installed on the exterior of their home. On appeal, the Merhis argue that questions of fact precluded the trial court from granting plaintiff, Dearborn Hills Civic Association, Inc.'s (the Association) motion for summary disposition. The Merhis also argue that the trial court erred when it denied their motion for reconsideration of its decision to enter the Association's proposed order because it included relief that was not supported by the trial court's oral ruling. For the reasons explained, we affirm the trial court's grant of the Association's motions for summary disposition and reconsideration, but vacate the June 26, 2020 order and remand for entry of a new order that comports with the trial court's oral ruling.

## I. FACTUAL BACKGROUND

The Merhis purchased their home located within the Association in 2013 under a land contract. In 2016, the seller transferred title to the property by a warranty deed that expressly provided that the conveyed property is subject to any existing building and use restrictions.

The original owners of lots in the Dearborn Hills subdivisions agreed to restrictive covenants set forth in a Declaration of Restrictions (the Restrictions) which limit the development and alteration of properties within the subdivisions and assigned the Association the right to approve or disapprove plans for development or renovation of properties. The Restrictions provided that they shall run with the land and could be extended by the agreement of the owners

-1-

of 65% of the area of the land subject to the original restrictions. The owners duly extended the Restrictions in 1999 through 2049 and recorded the Restrictions in the county register of deeds.

Article II of the Restrictions requires landowners to obtain the Association's approval in writing of the plans' conformity and harmony of the external design with existing structures within the subdivision before they erect or alter any building on the properties in the subdivision. Article X of the Restrictions precludes property owners from erecting fencing in front of the building line and allows only four-foot tall fences in the back of the building line "not constructed of solid board, and of such a character as not to obstruct the view."

In 2013, the Merhis erected fencing in their backyard. They also altered the facade of their home by installing stone siding on its exterior face in 2018. The Merhis did not submit any plans for their alterations for approval from the Association.

On September 8, 2018, the Association sent the Merhis a letter informing them that they violated the Restrictions by commencing a facade renovation without first submitting their plans to the Association for approval. The Association advised the Merhis that the stone facade they were erecting was nonconforming and would not be approved, and directed them to halt the renovation. The Association noted as well that the Merhis had installed a fence that violated the Restrictions. The Association asked the Merhis to remove the stone siding and fence. The record indicates that the City of Dearborn requires residents to submit a renovation permit application and obtain a permit for exterior facade renovations. The City's residential renovation information included with such applications states that if one's property is located within the Association, the Association's approval is required. The Merhis started their facade alteration project before seeking such a permit and after the Association notified them of their project's nonconformity. The record indicates that they applied for a permit on September 24, 2018, and the City issued them a renovation permit on December 3, 2018.[1]

The Association offered to work with the Merhis on bringing the home into compliance with the Restrictions. However, after the Merhis failed to follow the Association's instructions, the Association sued the Merhis on December 21, 2018, to enforce the Restrictions. The Merhis's lawyer filed an answer in May 2019 on behalf of Malik but not Rana. The Association requested and obtained the entry of a default against Rana by the court clerk. The Association moved for entry of a default judgment against Rana who never took steps to have the default set aside and also moved for summary disposition against the Merhis under MCR 2.116(C)(10) in November 2019.

In support of its summary disposition motion, the Association argued that the undisputed evidence showed that the Merhis's home was part of the subdivision and subject to the Restrictions which were validly promulgated. The Association asserted that the Merhis plainly violated the Restrictions by failing to submit their plans for renovation to the Association. It maintained that none of the approximately 1,250 homes within the subdivision featured a modern stone facade design like the Merhis installed on their home. The Association submitted photographs of numerous homes within the subdivision for comparison with images of the Merhis's home. The

---

[1] The City did not issue its final approval of the façade renovation until August 2019.

-2-

Association argued that the evidence established that the Merhis violated the Restrictions' Article II by installing stone siding not in conformity and harmony with the external design of existing homes in the subdivision. The Association also argued that the undisputed evidence established that the Merhis's fence exceeded the four-foot height restriction and its solid design obstructed the view which violated the Restrictions.

At the conclusion of the summary disposition motion hearing, the trial court ruled that the Merhis violated the restriction governing fences. Concerning the stone facade, the court stated that it was not "crystal clear about the stone," so it denied the motion. The trial court entered an order granting the Association summary disposition as to the fencing and ordered the Merhis to bring their fences into compliance with the Restrictions by June 30, 2020. The order, however, denied the Association summary disposition as to the stone facade and granted the Merhis's summary disposition on that issue. It then closed the case.[2]

The Association timely moved for reconsideration on two grounds: (1) that the trial court lacked the authority to grant summary disposition in favor of Rana because she defaulted and a default judgment should have been entered against her; and (2) that the trial court committed a palpable error when it rejected the Association's authority to decide whether the stone facade was in conformity and harmony with the existing structures' exterior designs within the subdivision. The Association asked the trial court to reconsider its order and enter an order granting the Association's motion for summary disposition.

The trial court held a hearing on the motion for reconsideration. The court took the parties' appearances and then informed them that it reconsidered its previous ruling on the fence and facade issues and announced that "on reconsideration the Court is granting [the Association's] motion on both issues." The court ruled that the Mehris would have to change the facade and fence and directed the Association to submit an order. Defense counsel remarked that he had not filed a response, the Association presented nothing new, and he did not see the palpable error. The trial court responded that it had the option to change its ruling at any time.

The Association submitted a proposed order under the seven-day rule, MCR 2.602(B)(3), which granted the Association's motion for reconsideration and motion for summary disposition, and provided for the entry of a default judgment against Rana. The Merhis objected to the entry of the order. The trial court denied the Merhis's objections and entered the Association's proposed order on June 26, 2020. The Merhis moved for reconsideration and the trial court denied their motion. The Merhis now appeal.

## II. STANDARDS OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). We review de novo the trial court's interpretation and application of restrictive covenants. *Conlin v Upton*, 313 Mich App 243, 254; 881 NW2d 511 (2015). We also review de novo whether

---

[2] The trial court entered a separate order denying as moot the Association's motion for entry of default judgment against Rana.

the trial court properly applied the common law applicable to covenants and equity. *Id*. Restrictive covenants are contracts. *Bloomfield Estates Improvement Ass'n*, *Inc v City of Birmingham*, 479 Mich 206, 214; 737 NW2d 670 (2007). "[T]he main goal in the interpretation of contracts is to honor the intent of the parties." *Mahnick v Bell Co*, 256 Mich App 154, 158-159; 662 NW2d 830 (2003). We review unpreserved claims for plain error. *Kern v Blethen-Coluni*, 240 Mich App 333, 336; 612 NW2d 838 (2000).

A motion under MCR 2.116(C)(10) tests the factual sufficiency of claims and the moving party bears the burden of establishing with admissible evidence its entitlement to judgment as a matter of law. *Lear Corp v Dep't of Treasury*, 299 Mich App 533, 536; 831 NW2d 255 (2013). If the nonmoving party fails to establish the existence of a genuine issue of material fact, the trial court must enter judgment for the moving party as a matter of law. *Id*. at 537. "A genuine issue of material fact exists when, viewing the record in the light most favorable to the nonmoving party, reasonable minds could differ on an issue." *Id*. A trial court's grant of summary disposition under MCR 2.116(C)(10) is proper when the evidence, "viewed in the light most favorable to the nonmoving party, show[s] that there is no genuine issue as to any material fact and the moving party is therefore entitled to judgment as a matter of law." *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5; 890 NW2d 344 (2016). A trial court properly grants a motion for summary disposition when the moving party establishes that, except for the amount of damages, there is no genuine issue as to any material fact. See *Barnard Mfg*, 285 Mich App at 369. The moving party has the initial burden to identify the issues about which there is no genuine issue of material fact with supporting evidence. *Id*. at 369-370. If the moving party properly supports the motion, the nonmoving party must present evidence that demonstrates that a factual dispute remains that must be resolved by the finder of fact; if the nonmoving party fails to do so, the trial court must grant the moving party's motion. *Id*. at 370. The nonmoving party may not rely on mere allegations or denials to establish a question of fact but present evidence that establishes a genuine issue for trial. *Id*. at 374. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

## III. ANALYSIS

### A. SUMMARY DISPOSITION OF CLAIMS IN EQUITY

The Merhis raise several claims of error involving the trial court's decision to grant the Association's motion for summary disposition.[3] The Merhis argue that the trial court erred when it granted the Association's motion for summary disposition because enforcement of restrictions

---

[3] The Association correctly notes that the Merhis have identified grounds for denying the Association's motion for summary disposition that they did not raise in the trial court. Because they did not raise those grounds in the trial court, they were unpreserved. See *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020). Nevertheless, this Court has the discretion to review unpreserved claims. See *Smith v Foerster-Bolser Constr, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006). Although this Court will exercise its discretion to review unpreserved claims in a civil case sparingly, see *Napier v Jacobs*, 429 Mich 222, 233-234; 414 NW2d 862 (1987), in the interests of finality, we elect to address each claim of error.

involve equity which they claim always involves questions of fact precluding summary disposition. We disagree.

In this case, the Association sued to enforce restrictive covenants. In *Bloomfield Estates*, 479 Mich at 214; (citations, quotation marks, and brackets omitted), our Supreme Court explained:

> Because of this Court's regard for parties' freedom to contract, we have consistently supported the right of property owners to create and enforce covenants affecting their own property. Such deed restrictions generally constitute a property right of distinct worth. Deed restrictions preserve not only monetary value, but aesthetic characteristics considered to be essential constituents of a family environment. If a deed restriction is unambiguous, we will enforce that deed restriction as written unless the restriction contravenes law or public policy, or has been waived by acquiescence to prior violations, because enforcement of such restrictions grants the people of Michigan the freedom freely to arrange their affairs by the formation of contracts to determine the use of land. Such contracts allow the parties to preserve desired aesthetic or other characteristics in a neighborhood, which the parties may consider valuable for raising a family, conserving monetary value, or other reasons particular to the parties.

A restrictive covenant is a contractual agreement limiting the use of property to enhance the value of the affected properties. *Conlin*, 313 Mich App at 255-256. For that reason, a suit to enforce a restrictive covenant is in essence a claim for breach of contract. *Thiel v Goyings*, 504 Mich 484, 495; 939 NW2d 152 (2019). The proper interpretation of a contract is normally a question of law for the court unless the terms of the agreement are equally susceptible to more than one interpretation or irreconcilably conflict with other provisions of the agreement. *Coates v Bastian Bros, Inc*, 276 Mich App 498, 503-504; 741 NW2d 539 (2007). When the only question involves the proper application of an unambiguous contract, summary disposition is appropriate. *Mueller v Frankenmuth Mut Ins Co*, 184 Mich App 669, 671; 459 NW2d 95 (1990).

The characteristics of the Merhis's fence and stone facade could be established by documentary evidence or testimony; as such, whether the fence and siding violated the restrictive covenants constituted a matter that could readily be tested on a motion for summary disposition. See *Franks v Franks*, 330 Mich App 69, 91; 944 NW2d 388 (2019) (noting that most claims usually involve elements that can be tested on a motion for summary disposition). The Association's complaint sought injunctive relief which is an equitable remedy. See *Redmond v Heller*, 332 Mich App 415, 439; 957 NW2d 357 (2020). The Merhis argue that in *Sun Oil Co v Trent Auto Wash, Inc*, 379 Mich 182, 191; 150 NW2d 818 (1967), our Supreme Court created a categorical rule barring the grant of summary disposition whenever equity is involved. Although there may be occasions when questions of fact exist that implicate the trial court's ability to fashion an appropriate decree in equity, precluding summary disposition, this Court rejected the argument that *Sun Oil Co* held that summary disposition is never appropriate in cases involving equity. *Franks*, 330 Mich App at 91. This Court explained that claims involving equity may be tested on a motion for summary disposition like any other claim, and summary disposition may be granted unless the nonmoving party demonstrates that genuine issues exist that must be decided by the finder of fact. *Id*. at 91-92. Summary disposition, therefore, is appropriate in cases with undisputed facts that demonstrate that the moving party is entitled to injunctive relief. *Id*. at 92.

In this case, the parties did not dispute the underlying facts regarding the fence and stone facade installed by the Merhis. The trial court, therefore, had the authority to grant the Association's motion for summary disposition if the undisputed evidence established that the Restrictions applied to the Merhis's property, the fence and stone facade installation violated the Restrictions, and the Merhis failed to establish defenses to the application of the Restrictions to their property. In other words, if the Association proved its case and the Merhis failed to establish the existence of a genuine issue of material fact, the Association would be entitled to injunctive relief as a matter of law.

## B. DUTY TO SUBMIT PLANS

The Merhis assert that the Restrictions did not apply to them or their property because they did not have actual knowledge of the Restrictions. They argue further that, even if the Restrictions applied, they had no duty to submit their plans for renovation to the Association. They contend that the Restrictions provide that a property owner has no duty to submit plans under those situations when the property owner manages to complete the renovation before the Association sues to enjoin it. They further maintain that, even if they had to submit their plans, any violation was merely technical and that the trial court erred when it failed to consider that fact when resolving the Association's motion for summary disposition. Each of these arguments is completely without merit.

Michigan courts generally enforce deed restrictions out of regard for the parties' freedom to contractually create covenants affecting property. See *Bloomfield Estates*, 479 Mich at 214. Although courts strictly construe ambiguous deed restrictions in favor of the free use of property, courts will enforce unambiguous deed restrictions as written. *Thiel*, 504 Mich at 496-497. When a term has not been defined by the parties, courts will give the terms their commonly used meanings. *Bloomfield Estates*, 479 Mich at 215.

In *Thiel*, our Supreme Court explained:

> Courts review restrictive covenants with a special focus on determining the restrictor's intent. We are not so much concerned with the rules of syntax or the strict letter of the words used as we are in arriving at the intention of the restrictor, if that can be gathered from the entire language of the instrument. We determine the intended meaning of the chosen language by reading the covenants as a whole rather than from isolated words and must construe the language with reference to the present and prospective use of property. And we enforce unambiguous restrictions as written. Thus, we consider challenges to restrictive covenants in a contextualized, case-by-case manner. [*Thiel*, 504 Mich at 496 (quotation marks, alterations, and citations omitted).]

In its motion for summary disposition, the Association presented evidence that the Merhis's predecessor in interest had agreed to the extension of the Restrictions in 1999 and that the Restrictions had been properly recorded in the county register of deeds. The Restrictions, therefore, applied to and ran with the Merhis's land in the Association subdivision. The evidence that the Restrictions had been extended and recorded in 1999, which the Merhis left unrebutted, established that, as a matter of law, the Merhis had at a minimum constructive notice of the

Restrictions and were bound by them as covenants that ran with their land. *Conlin*, 313 Mich App at 260 (stating that a subsequent purchaser of land is bound by covenants if he or she has actual or constructive notice of the covenants and relating that a purchaser has constructive notice when the covenants appear in his or her chain of title). Whether the Merhis's had actual knowledge of the Restrictions is not dispositive. Their argument that the Restrictions did not apply to them and their property because they lacked actual knowledge fails as a matter of law. Acceptance of the argument would turn on its head the essential principles of Michigan's race-notice property law.

The Merhis also could not rely on approval by the City of Dearborn of their renovation projects to avoid their obligations under the Restrictions. The Restrictions established contractual obligations that a municipality cannot impair through its ordinances. See *Phillips v Lawler*, 259 Mich 567, 570-571; 244 NW 165 (1932). As the Association correctly submits, deed restrictions involve obligations that are separate from a municipality's authority to regulate property, and both the Restrictions and the municipality's ordinances may be enforced. See *Rofe v Robinson*, 415 Mich 345, 351-352; 329 NW2d 704 (1982).

Under Article II of the Restrictions, the Merhis were prohibited from erecting, placing, or altering their property unless and until the Association or its representative approved in writing their plans. Article II provides in relevant part:

> No building shall be . . . altered on any building lot or parcel in said subdivisions until the building plans, specifications, and plot plan . . . have been approved in writing by the [Association] or by a representative designated by said Association for conformity and harmony of external design with existing structures in said subdivisions and with the hereinafter mentioned restrictive covenants . . . . If the aforesaid Association or its designated representative fails to approve or disapprove such design and location within 30 days after the plans have been submitted to said Association or its designated representative, or if no suit to enjoin the erection of such building or the making of such alterations has been commenced prior to the completion thereof, such approval will not be required.

For the first time on appeal, the Merhis contend that they did not need to get approval for their exterior improvements under Article II because the Association did not file suit to enjoin them from making the improvements before they contend that they may have completed the improvements. The Merhis maintain that an approval exception applies whenever a homeowner manages to complete his or her improvements before the Association sues to enforce the Restrictions, even if the homeowner never submitted any plans to the Association. This argument lacks any merit.

Article II expressly prohibits the erection, placement, or alteration of a lot without the Association's prior written approval of the plans which must meet certain criteria. Under the plain language of the Restrictions, if property owners desire to alter their house's exterior design, they must first submit their plans to the Association. Once submitted, property owners may not commence work unless and until they obtain approval from the Association or its representative. If, however, within 30 days of submission of the request for approval the Association has neither approved nor disapproved and a suit to enjoin the alteration has not been filed, only then is approval not required.

Article II does not support the Merhis's contention that an owner may proceed with alteration without first submitting the plans for approval. Article II sets forth three contractual duties. First, owners must submit their alteration plans; second, they must obtain the Association's approval of such plans; and third, their alteration must be in "conformity and harmony of external design with existing structures in the subdivision." The plan submission and approval requirement do not become unenforceable and irrelevant if "no suit to enjoin" the renovation is filed before the homeowner completes the renovation. Property owners cannot evade their contractual obligations by breaching their first contractual obligation, the submission of their plan, and then breach the second contractual obligation, the obtaining of prior written approval before commencement of the work, and also breach the conformity and harmony obligation, by merely finishing the project before being sued. Article II must be read in context and must be harmonized with the other provisions set forth in the Restrictions. See *Thiel*, 504 Mich at 496, 501. A plain reading of the requirements makes it immediately clear that the Mehris's interpretation lacks validity because it renders meaningless the very obligations to which all subdivision property owners are bound. Read as the Merhis contend, the restrictors intended that the Restrictions applied only to those who were willing to engage in the approval process. The Merhis's interpretation makes the contractual obligations inapplicable to property owners who scoffed at the deed restrictions and act quickly enough to evade enforcement. Such interpretation does not comport with the very plain language of Article II or Article XII, which authorizes any subdivision property owner to prosecute in law or equity any violation of any restriction to prevent the violation or obtain other relief. Article II logically must be understood to require subdivision property owners to submit plans to the Association or its representative for approval before commencing any building alteration. The use of the word "shall" in Article II expresses a categorical imperative which does not permit or condone violation of the approval process or suggest that intentional or even inadvertent violations of the requirements are excusable and rendered unenforceable.

Article II's provisions are framed in an if-then form: if the owner submits a plan and the Association fails to act within 30 days, then the property owner does not need the Association's approval to proceed with his or her building or renovation.[4] More specifically, the provisions intend that a property owner would not need the Association's written approval if the Association did not approve or disapprove the plans within 30 days of the property owner's submission of the plans, or if no one sued to enjoin the building or renovation before completion of the building or renovation. The approval exceptions are stated as consequences for inaction: a homeowner does not need approval if, after submission of the plans, the Association fails to act within the time limit or no one sues to enjoin the property owner before completing the proposed project. Notably, the second exception does not apply solely to the Association's inaction—any suit by any person to enjoin will preclude application of the exception.

The approval exceptions must be understood in light of the fact that the parties to the Restrictions agreed that, under the first provision of Article II, a property owner has no authority to begin building or renovating without first obtaining the Association's approval. Article II plainly and clearly imposes a duty on property owners to submit plans for approval to the

---

[4] Notably, the exception only applies to the approval process stated in Article II. It does not provide an exception to application of the restrictive covenants as a whole.

Association before the property owner can make any alterations or begin any construction. The exceptions to the approval requirement apply when the property owner has sought approval, but the Association fails to timely act on the submission. The second exception provision applies only when the property owner has sought approval and no party sues to enjoin the project before its completion. The second exception is closely linked with the first in that it is couched as an alternative to the requirement that the Association act timely. Because a property owner cannot commence a project without first getting the Association's approval, it is evident that the second exception cannot be interpreted to allow a property owner to breach Article II and then be rewarded for doing so. Such a construction would render the primary obligation nugatory; and courts must avoid a construction of one part of a contract that renders another part surplusage or nugatory. See *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 468; 663 NW2d 447 (2003). Properly understood, the first exception applies only when the property owner has first sought approval for the project and the Association has by its inaction waived its right to approve the project. The property owner does not need the Association's approval to proceed after the 30-day period has elapsed. However, if someone sues to enjoin the project after it has begun, but before it is complete, the property owner's project is again subject to the approval requirement. Both exception provisions contemplate that the property owner has first met the plan submission obligation which puts everyone on notice of the owner's plans. If the property owner has not submitted plans for approval, neither exception applies.

In this case, it is undisputed the Merhis failed to submit any plans to the Association or its representative for approval. Therefore, neither exception to the approval requirement stated in Article II applies. Because the Merhis failed to establish a genuine issue of fact as to whether they had to obtain the Association's approval, the trial court did not err when it determined that the Association had shown that the Merhis breached the Restrictions by failing to submit plans for approval before commencing their renovations.

The trial court also did not err when it granted summary disposition notwithstanding the Merhis's claim that the failure to submit plans amounted to a mere technical violation. Our Supreme Court has stated that courts will enforce otherwise valid deed restrictions by injunction except in three situations: (1) when the breach sought to be enjoined was a mere technical violation without substantial injury; (2) when the conditions have changed such that the restrictions are no longer enforceable; and (3) when enforcement is barred by the applicable period of limitations or the equitable doctrine of laches. See *Cooper v Kovan*, 349 Mich 520, 530; 84 NW2d 859 (1957). This Court has defined a technical violation as a slight deviation or violation that in no way adds to or takes from the objects and purposes of the general scheme of development reflected by the deed restrictions. See *Webb v Smith (After Second Remand)*, 224 Mich App 203, 212; 568 NW2d 378 (1997).

In this case, the Merhis's failure to submit their plans to the Association deprived the Association of the right to review the plans and determine whether the proposed changes to the exterior of the Merhis's home were in conformity and harmony with the character of the structures in the subdivision as a whole. The Association presented substantial evidence that it did not approve and would not have approved the stone facade at issue, notwithstanding that it was stone, which was a permitted material for exteriors. The Association explained to the trial court that the modern stone choice clashed with the traditional uses of stone on the facades of structures that predominated in the subdivision. The Association also showed that, for those homes within the

subdivision that had stone facades and had a cantilevered upper story, such homes did not have stone on the upper story but instead had wood or vinyl siding.

Had the Merhis submitted plans to the Association before they commenced their work, the Association could have disapproved the plan and worked with the Merhis to help develop a plan in conformity and harmony with the existing design character of the structures in the subdivision. The Merhis's failure to submit plans and unapproved exterior nonconforming alteration caused substantial injury and compelled the Association to enforce the Restrictions after the project had already been started and when any dispute would necessarily involve considerable expense. See *id*.; see also *Village of Hickory Pointe Homeowners Ass'n v Smyk*, 262 Mich App 512, 516; 686 NW2d 506 (2004) (rejecting the contention that a property owner's failure to submit plans for approval before commencing the work amounts to a mere technical violation). The trial court, therefore, did not err by refusing to excuse the Mehris's breaches of the Restrictions as a mere technical violation.

## C.  THE FENCING

The Merhis contend that their fencing complied with the Restriction's fence provision. In its motion for summary disposition, the Association presented evidence that, if left unrebutted, established that the Merhis violated the Restrictions by constructing a fence that exceeded the height limitation and obstructed views.

Article III of the Restrictions defines the building line for all lots to be 25 feet from the front street. Article X prohibits property owners from erecting fences in the area in front of the building line but allows fencing to the rear of the building line. Such rear fencing, however, must be "not more than four (4) feet high," must not be "constructed of solid board," and must not "obstruct the view." These restrictions are not ambiguous and, contrary to the Merhis's contention on appeal, apply to all fencing in the areas where fencing is permitted. Because the Restrictions on fencing are not ambiguous, they must be enforced as written. See *Thiel*, 504 Mich at 496. The unambiguous restrictions on fencing prohibit any fence that exceeds four feet in height, has solid boards, and blocks the line of sight.

In its motion for summary disposition, the Association submitted photos of the Merhis's property that showed two spans of fencing. The image of the fence on the side of the Merhis's house showed a solid fence. The image of the fence at the driveway similarly showed that it too was solid. It also showed that their fence stood significantly taller than the neighbor's fence, which appeared to be a typical chain-link fence. The Association presented sufficient evidence to establish that the Merhis had erected fencing that violated the Restrictions. In their response, the Merhis presented no evidence to rebut the Association's evidence.

For the first time on appeal, the Merhis argue that the Association failed to present evidence demonstrating that every length of their fencing violated the Restrictions. They assert that the Association's photos did not depict the fencing at the rear of the lot. This argument lacks merit because the Association did not have to establish that the entire backyard fencing violated the Restrictions to prevail. The Association merely had to demonstrate that the Mehris's fencing, whether all or merely a portion, failed to conform to the Restriction's limitations. The trial court's January 2020 order required the Mehris to bring their fences into compliance with the Restrictions.

-10-

Thus, regardless whether all or merely a portion failed to comply, only the noncompliant portion had to be changed. The Mehris cannot establish the existence of a genuine issue of material fact in this regard. Moreover, even if the degree of nonconformity constituted a material fact for the fact-finder's determination, the Merhis had the obligation to establish the existence of such a genuine issue of material fact once the Association presented evidence of the fencing's violation of the Restrictions. They failed to do so. Now they merely suggest that the spans which are not clearly visible in the Association's photographic images might not violate the Restrictions. Such assertion does not establish a genuine issue of material fact. Accordingly, the trial court did not err when it determined that the Association proved that the Merhis's fence violated the Restrictions entitling the Association to judgment as a matter of law.

The Merhis also argue that they established a question of fact as to whether they had defenses to the enforcement of the Restrictions. They specifically maintain that the Association could not enforce the Restrictions after sitting on its rights for five years regarding their fencing. We disagree.

Once the Association established that the Merhis violated the Restrictions governing fencing, the burden shifted to the Merhis to present evidence to support their affirmative defenses. See *Palenkas v Beaumont Hosp*, 432 Mich 527, 548; 443 NW2d 354 (1989) (opinion by ARCHER, J.); see also *id*. at 530 (concurring in Sections I and II of Justice ARCHER'S opinion). The Merhis only presented evidence that they built the fences five years earlier and that the Association did not enforce the Restrictions until recently. The Merhis suggest that the delay alone sufficed to establish waiver, but mere delay is not sufficient to establish that defense.

"A waiver is a voluntary relinquishment of a known right." See *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 204; 747 NW2d 811 (2008) (quotation marks and citation omitted). A party to a contract may affirmatively waive his or her rights under a contract, but the act or acts giving rise to waiver must be done with full knowledge of the relevant facts. See *Bastian Bros Co v Brown*, 293 Mich 242, 250-251; 291 NW 644 (1940). Further, a waiver of the right to enforce a restriction by one lot owner does not preclude a different lot owner from seeking to enforce the restriction. See *Cook v Bandeen*, 356 Mich 328, 335; 96 NW2d 743 (1959).

In this case, the Merhis did not present any evidence that the Association knew that the Merhis had violated the fencing restrictions before the Association discovered the facade alteration issue. When there is no evidence that the party seeking to enforce deed restrictions knew about the violation earlier than the events giving rise to the suit, there can be no waiver. See *Jones v Schaffer*, 332 Mich 190, 193; 50 NW2d 753 (1952) (rejecting the argument that the use of the residence as a five-family unit for 17 years amounted to waiver because there was no evidence concerning when the plaintiff first became aware of the situation). The Merhis failed to present evidence that the Association waived its right to enforce the Restrictions on fencing.

The Merhis also failed to establish that the Association untimely filed its complaint about the fencing. MCL 600.5807(5) provides that a 10-year period of limitations applies to actions founded on a covenant in a deed. Ordinary actions for breach of contract are subject to a six-year period of limitations. MCL 600.5807(9). The record indicates that the Merhis erected the fencing around 2013 and the Association sued in 2018. Accordingly, regardless whether a 6-year or 10-year limitations period applied, neither statute of limitations barred the Association's lawsuit.

Further, although a court sitting in equity may bar a claim as untimely under the doctrine of laches, the mere passage of time alone does not establish laches. See *Knight v Northpointe Bank*, 300 Mich App 109, 114-115; 832 NW2d 439 (2013). Rather, evidence must show that the plaintiff's failure to earlier act prejudiced the defendant. *Id*. at 115. The party charged with laches must have some legal notice—actual or constructive—that puts him or her on notice that he or she needs to act or might lose the right to do so. See *McCrickett v Wilson*, 50 Mich 513, 516; 15 NW 885 (1883) ("It is claimed the defendant is guilty of such laches in not sooner moving for the relief she now prays as to deprive her of any benefit from her petition. Upon this point it is sufficient to say that some legal notice, actual or constructive, must be given to the defendant, making it reasonable or necessary for her to act before such laches can be imputed."). The Merhis did not present any evidence that the Association had legal notice of the noncompliant fencing earlier and sat on its rights, or that the Association's failure to sue earlier prejudiced them. Moreover, it is well established that "one who seeks equity must do equity." *Windisch v Mtg Security Corp of America*, 254 Mich 492, 493-494; 236 NW 880 (1931). The Merhis, who indisputably violated the Restrictions, cannot be said to have clean hands and entitled to equitable relief.

The Association properly supported its motion for summary disposition with undisputed evidence that established that the Merhis failed to seek approval before installing the fencing, that their fencing violated the Restrictions, and the Merhis failed to present any evidence that the fencing did not violate the Restrictions. The Mehris failed to present any evidence that they had a defense to the enforcement of the Restrictions on fencing. The trial court, therefore, did not err when it granted the Association's motion for summary disposition as to the fencing.

D. THE STONE FACADE

The Association also moved for summary disposition on its claim that the Merhis's front exterior design alteration of their house violated the Restrictions. Specifically, the Association sought to enforce its right to prevent improvements that were not in conformity and harmony with the other homes in the subdivision as provided under Article II of the Restrictions. The Association submitted evidence that it had informed the Merhis that it did not approve the changes because it felt that the changes were not in conformity and harmony with the other structures in the subdivision. It also supported its motion with numerous photos of homes in the subdivision and showed that none of the homes used a modern split stone on their exterior facades. The photos revealed that none of the homes with an upper story cantilever design featured siding for the cantilevered portion other than wood, vinyl, or other authorized siding (with one exception, which had been disputed in another lawsuit). The Association's evidence sufficed to establish that the Restrictions precluded a property owner from making alterations without first obtaining the Association's determination that the alteration would be in conformity and harmony with external design of existing structures in the subdivision. The Association established that it never approved the Merhis's facade alterations because they never sought approval and because the changes failed to conform or harmonize with the other homes in the subdivision.

In response to the Association's motion, the Merhis argued that their selection of stone did not violate the Restrictions because the Restrictions specifically allowed a property owner to use stone, and they contended that a question of fact existed whether they met that requirement. They also asserted that the Restrictions had no provisions specifically applicable to cantilevers and that none of the homes had a historic home designation.

Under Article VI of the Restrictions, a property owner must construct all "buildings . . . of stone, brick or stucco exterior." A property owner may use wood siding with special approval from the Association. The Merhis's argument that their use of stone was consistent with Article VI, however, was inapposite, as was their mention of the fact that none of the houses had been determined to be historic homes. The Association did not argue that the Merhis violated Article VI or some provision for historic homes. Rather, the Association argued and presented evidence that the specific type of stone that the Merhis selected failed to conform and be in harmony with the existing structures in the subdivision as required by Article II of the Restrictions. Similarly, the fact that the Restrictions did not provide any restrictions applicable to cantilevers did not preclude the Association from concluding that a particular renovation involving a cantilevered portion of a house was not in conformity or harmony with the style of other houses that had cantilevers.

The Restrictions required property owners to use stone, brick, or stucco siding, but they also required the property owner's project to be in conformity and harmony with the other exterior designs in the subdivision. For that reason, the Restrictions cannot be interpreted to provide that any selection of stone for a structure's facade automatically complied with the Restrictions. The property owners who collectively adopted the deed restrictions agreed that the Association had authority to decide whether a particular construction or alteration project conformed with and harmonized with the other structures in the subdivision. Generally, when parties agree to submit a matter to a third party for a determination, the third party's determination is binding on the parties in the absence of fraud, bad faith, or mistake. See *Strom-Johnson Const Co v Riverview Furniture Co*, 227 Mich 55, 65-66; 198 NW 714 (1924). The same is true for deed restrictions. The reservation of a right of approval is a valid and enforceable covenant. See *West Bloomfield Co v Haddock*, 326 Mich 601, 612; 40 NW2d 738 (1950). Courts review such decisions only to determine whether the party with the right of approval exercised that right in a fair and reasonable manner. *Id*. at 612-613.

In this case, the Association determined that the particular style of stone selected by the Merhis and their decision to use it over the entire facade of their house—including the cantilevered portion—failed to conform and harmonize with the other houses in the subdivision. The terms conformity and harmony were not defined in the Restrictions and so should be given their ordinary meaning. A house is in conformity with other houses when it corresponds in form, manner, or character with the other houses. See *Merriam-Webster's Collegiate Dictionary* (11th ed) (defining conformity). Similarly, a house is in harmony with the other houses in the subdivision when its structure and composition are congruent and in agreement with the houses in the whole subdivision. *Merriam-Webster's Collegiate Dictionary* (11th ed). The Association presented evidence that none of the homes with cantilevers—other than an outlier that was subject to litigation—had stone siding across the entire facade of the home. Rather, for houses with a cantilevered upper level, the evidence established that the houses had stone or brick on the lower level and wood or vinyl siding on the cantilevered upper level. The Association also established that none of the houses used the modern style of split stone that the Mehris installed. Further, the evidence established that the houses with stone on their facades used more traditional stone applications. This evidence demonstrated that the Association reasonably determined that the Merhis's project lacked conformity and harmony with the exterior design of structures within the subdivision. See *West Bloomfield*, 326 Mich at 612.

Contrary to the Merhis's argument on appeal, the Association did not impose new restrictions in the guise of interpreting existing restrictions. See, e.g., *Conlin*, 313 Mich App at 265-266. Rather, the Restrictions unambiguously required all property owners to submit their proposed plans for alterations to the Association and gave the Association the discretion to determine whether such proposed plans were in conformity and harmony with the existing structures in the subdivision. Because the subdivision had been long established, this case did not involve a self-imposed plan premised on restrictions adopted on some ad hoc basis. Rather, the subdivision had a common plan visually exemplified by the existing houses, which plan the record reflects guided the Association's exercise of discretion. See *Ardmore Ass'n v Bankle*, 329 Mich 573, 577-578; 46 NW2d 378 (1951) (holding that a reservation of the power to approve building plans by reference to the types of homes already in the subdivision is enforceable when the subdivision has been sufficiently developed to establish a common plan). Accordingly, the Restrictions specifically authorized the Association to determine whether the stone and its installation conformed and harmonized with the existing houses in the subdivision. The record does not indicate that the Association exercised its discretion unfairly or unreasonably in this case. See *West Bloomfield*, 326 Mich at 612.

The Merhis argued to the trial court that several of the photos submitted by the Association demonstrated that the Association acted unreasonably when it determined that their renovation failed to conform and harmonize with other houses in the subdivision. For example, they asserted that the photo of 24316 Fairmount showed that it had modern brick over the entire front of the house. That photo, however, depicts a brick house with brick veneer on the front, flat-faced portion of the two-story facade; but on the cantilevered portion of the house, the second story has wood siding. The Merhis's house, by contrast, features a full cantilevered second story design. As such, the photo of the Fairmount house actually supported the Association's position. The other images cited by the Merhis similarly contradicted the Merhis's position. The image of 341 South Highland, for example, showed a house with traditional stone—which was strikingly different from the stone selected by the Merhis—on the lower portion of the facade, with wood siding on the cantilevered portion of the house.

In response to the Association's motion, the Merhis failed to present or identify any evidence that the Association unfairly or unreasonably determined that the Merhis's design choices failed to conform and harmonize with the existing structures. Because the evidence established that the Mehris failed to engage in the plan approval process required under Article II, and no evidence establishes that the Association improperly exercised its discretion to disapprove of the Merhis's alteration, the trial court properly determined that the Association established as a matter of law that the Merhis's alteration violated Article II of the Restrictions.

The Merhis also argued before the trial court that the Association attempted to expand the Restrictions with its guidelines. That argument lacks merit. The Association sought enforcement of the Restrictions' conformity and harmony provision of Article II—it did not attempt to enforce its guidelines. Further, it was not improper for the Association to promulgate guidelines to illustrate the way that the subdivision had developed for purposes of applying Article II.

The Merhis also suggest that the trial court erred to the extent that it deferred to the Association's assessment whether the Merhis's alteration conformed with the subdivision as a

whole. More specifically, they argue that the trial court ultimately had the discretion to choose whether to enforce the Restrictions in equity and had to make that determination itself.

The parties to the deed restrictions chose to assign the authority to determine whether a particular alteration was in conformity and harmony with the external design of structures within the subdivision to the Association; they did not assign that authority to the trial court. Courts must respect the parties' freedom to agree contractually to assign the right to a third party. See *Bloomfield Estates*, 479 Mich at 214. That provision is unambiguous and had to be enforced as written. See *Thiel*, 504 Mich at 496-497. The trial court had the role to determine whether a genuine factual dispute existed regarding whether the Association acted fairly and reasonably when it made its determination; it did not have the authority to make the conformity and harmony determination for itself. See *West Bloomfield*, 326 Mich at 612-613. The record reflects that the Association presented substantial evidence that the Merhis's facade alteration clashed with the external design of the other houses in the subdivision. Given the plethora of evidence, no reasonable fact-finder could find that the Association acted unfairly or unreasonably when it determined that the Merhis's alteration failed to conform and be in harmony with the houses in the subdivision. See *West*, 469 Mich at 183 (defining a genuine issue of material fact to be one for which there is evidence about which reasonable minds might disagree). Therefore, the trial court had to enforce that determination.

The Merhis's claim that the trial court also had the authority to refuse to enforce the Association's determination if it felt that the balance of the equities warranted doing so was also misplaced. In *Cooper*, our Supreme Court examined whether the trial court sitting in equity properly applied the law when it resolved a claim by a property owner who sought to enforce a deed restriction that limited the use of lots within the subdivision for residences. *Cooper*, 349 Mich at 522-525. The Court opined that the trial court correctly determined that the restrictions were clear and unambiguous. *Id*. at 527-528. It also agreed with the trial court that the plaintiffs did not waive their right to enforce the restrictions by acquiescing to intermittent, noncommercial use, which did not involve permanent structures. *Id*. at 529. Our Supreme Court only disagreed with the trial court's ultimate decree.

The Court explained that the trial court had apparently sought to balance the equities of all the parties. The trial court allowed the defendant to make commercial use of the property, but ordered a green belt around the area to be used for the shopping center. Our Supreme Court disagreed that the trial court had the authority to balance the equities in that way. The Court explained that trial courts must generally enforce valid deed restrictions by injunction. The Court recognized that there were exceptions; it stated, for example, that courts sitting in equity will enter orders to remedy mere technical violations with no substantial injury. It also stated that courts sitting in equity will not enforce restrictions, which had become unenforceable through changed conditions, and will not enforce restrictions after the passage of the applicable period of limitations or under the doctrine of laches. *Id*. at 530.

After restating these principles of law, the Court examined the facts and determined that allowing a commercial center in violation of the deed restriction was not a technical violation with no substantial injury; it was a clear violation that imposed a substantial harm on all the residences in the subdivision. *Id*. at 530-531. The Court also noted that the plaintiffs were not guilty of laches and sued within the applicable period of limitations. *Id*. at 531. Finally, the Court rejected the

-15-

contention that the evidence showed that there had been a change in circumstances that made it inequitable to enforce the restriction. *Id*. at 531-532. Having concluded that none of the exceptions to the general rule that unambiguous deed restrictions must be enforced as written applied to the case at hand, the Court vacated the trial court's decree and remanded the case for entry of an order enforcing the restrictions. *Id*. at 533.

This Court has held that our Supreme Court's decision in *Cooper* established the rule that courts must generally enforce valid deed restrictions as written unless one of the exceptions identified in *Cooper* applies. See *Webb*, 224 Mich App at 211-212 (holding that the trial court did not err when it refused to balance the interests in fashioning its decree and stating that the proper inquiry was whether any of the exceptions to enforcement stated in *Cooper* applied). As such, the trial court did not have the discretion to balance the equities and choose to enforce the restrictions in part or not at all, depending on the facts.

In this case, the Merhis did not present any evidence that the character of the neighborhood had changed so much that it would be inequitable to enforce the Restrictions at issue. As already discussed, the evidence also showed that the Association was not guilty of laches and did not waive its right to enforce the Restrictions against the Merhis. The evidence showed too that the applicable period of limitations had not passed and that the Merhis's violations were not mere technical violations that caused no substantial injury. Accordingly, none of the exceptions stated in *Cooper* applied to the facts of this case. See *Cooper*, 349 Mich at 530. Even assuming that the trial court had the discretion to balance the equities, the Merhis failed to present any evidence tending to show that it would be inequitable to enforce the Restrictions against them. Rather, the equities favored enforcing the Restrictions, lest today's exception become tomorrow's precedent. See *Oosterhouse v Brummel*, 343 Mich 283, 289; 72 NW2d 6 (1955).

Given the undisputed evidence, the trial court erred when it originally denied the Association's motion for summary disposition regarding whether the Merhis violated Article II of the Restrictions when they selected a type of facade that was not in conformity and harmony with the types of facades on existing houses and chose to use it on the cantilever portion of their house in contravention of the prevailing external design of structures in the subdivision. Therefore, the trial court did not abuse its discretion when it corrected its error on reconsideration. See *Auto-Owners Ins Co v Compass Healthcare, PLC*, 326 Mich App 595, 608; 928 NW2d 726 (2018) (recognizing that trial courts have considerable discretion to grant reconsideration to correct mistakes).

IV. RECONSIDERATION

A. STANDARD OF REVIEW

The Merhis also raise several claims of error involving the trial court's decision to grant the Association's motion for reconsideration, enter the Association's proposed order on reconsideration, and deny the Merhis's motion for reconsideration. We review for an abuse of discretion a trial court's decision on a motion for reconsideration. *Auto-Owners*, 326 Mich App at 607. A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Id*.

## B. ANALYSIS

On appeal, the Merhis suggest that the trial court erred when it granted the Association's motion for reconsideration because they had established a question of fact that precluded summary disposition. We disagree.

To establish grounds for reconsideration, the Association had to prove that the trial court made a palpable error and that a different disposition would result from correction of the error. See *Luckow Estate v Luckow*, 291 Mich App 417, 426; 805 NW2d 453 (2011), citing MCR 2.119(F)(3). As already discussed, the trial court erred when it originally denied the Association's motion for summary disposition of its claim that the Merhis's stone facade alteration violated the Restrictions. The Association correctly demonstrated that it alone had the authority to determine whether the Merhis's external design material choice and installation were in conformity and harmony with the exterior designs of existing structures in the subdivision. The trial court's role was to determine whether the Merhis established a question of fact as to whether the Association exercised its discretion in a fair and reasonable manner. See *West Bloomfield*, 326 Mich at 612-613. The record reflects that the Merhis failed to establish a genuine issue of material fact on that issue which required the trial court to grant the Association's motion for summary disposition. Because the Association established a palpable error that affected the outcome, see *Luckow Estate*, 291 Mich App at 426, the trial court did not abuse its discretion when it granted the Association's motion for reconsideration, see *Auto-Owners*, 326 Mich App at 607.

The Merhis also argue that the trial court erred when it denied their motion for reconsideration of the trial court's decision to enter the order of June 26, 2020. Specifically, they argue that the trial court erred when it signed the Association's proposed order because it contained relief that the trial court did not discuss orally.

At the hearing on the Association's motion for reconsideration, the trial court did not allow the parties to argue; it merely stated that it reconsidered its prior decision and decided to grant the Association's summary disposition motion. The trial court did not provide further analysis beyond stating that it had the authority to change its mind. Thereafter, the Association submitted a proposed order granting its motion for reconsideration and granting its motion for summary disposition in full and ordering summary disposition in its favor against the Merhis. The Association also included language ordering a default judgment against Rana. The proposed order included a command to bring the fence "into compliance" and required the Merhis to remove the stone siding "on or before June 30, 2020," and replace it with "approved brick and vinyl or wood siding." The proposed order included language that the Association would be "allowed" to return to court to enforce the order and obtain further relief, which "shall include" an award of attorney fees. The proposed order also included an injunction restraining the Merhis from modifying, altering, improving, or building without first obtaining written approval from the Association.

A party may submit a proposed order after the trial court grants judgment or an order. See MCR 2.602(B)(3). In the absence of objections, the trial court had to sign the Association's proposed order submitted under the seven-day rule, MCR 2.602(B)(3), if the court determined that the order comported with its decision. See MCR 2.602(B)(3)(a). Additionally, although trial courts speak through their written orders, a trial court may not sign a proposed order that does not comport with its earlier oral ruling. See *Jones v Jones*, 320 Mich App 248, 261 & n 5; 905 NW2d

475 (2017). A trial court, however, can sign an order submitted under MCR 2.602(B)(3) that includes terms that the trial court did not specifically mention at a hearing. Stated another way, although a trial court's oral pronouncements limit the content of a proposed order submitted under MCR 2.602(B)(3), see *Jones*, 320 Mich App at 261 & n 5, the content of the order may include things impliedly authorized by the ruling, but not specifically discussed. Therefore, to the extent that the Merhis rely solely on the fact that the trial court did not orally discuss each element found in the proposed order, their claims have no merit.

The only oral ruling that the parties had to guide the content of any proposed order was the trial court's statement that it had decided to grant the Association's motion for reconsideration. In its motion for reconsideration, the Association asked the trial court to grant two forms of relief: (1) the grant of summary disposition on the issue of the stone facade alteration, which had previously been denied, and (2) to order entry of default judgment against Rana. Because the trial court stated that it was granting the motion for reconsideration, it cannot be said that the language granting the Association's motion for summary disposition on the stone facade and entering the default did not comport with the trial court's oral pronouncement. Further, the trial court had already determined that the Merhis had violated the Restriction governing fences. There was also nothing inconsistent with the trial court's decision that precluded the Association from including language requiring the Merhis to bring their fence into compliance with the Restrictions. Accordingly, the trial court did not abuse its discretion when it denied the Merhis's motion for reconsideration of its decision to sign the order because of these provisions. See *Auto-Owners*, 326 Mich App at 607.

The proposed order, however, included terms that went beyond those implied by the trial court's decision to grant summary disposition. By granting the Association's motion for summary disposition, the trial court acknowledged that the Association properly exercised its discretion to disapprove the Merhis's choice of stone and decision to install it over the entire facade of their house. The proposed order could—for that reason—include language requiring removal of the stone installed in violation of the Restrictions and replacement with an exterior design in conformity and harmony with the exterior designs of structures within the subdivision as determined by the Association. It did not follow from the trial court's decision, however, that the order could include requirements beyond those stated in the Restrictions. For example, the Association presented evidence that other houses had stone on the portion of the house below the cantilevered portion, which suggested that the Merhis could again choose stone for the lower portion of the facade on their house, if the stone is in conformity and harmony with the subdivision as a whole. Therefore, the order should not have limited the Merhis to the use of particular types of materials when replacing their facade. Rather, the order should have limited the Merhis to selecting facade materials in conformity and harmony with the exterior design of structures in the subdivision as determined by the Association consistent with Article II of the Restrictions.

The Association also went too far when it included provisions in the order that required the trial court to award attorney fees if the Association had to return to court to enforce the order. The trial court's decision did not impliedly include any award of attorney fees, let alone a ruling that future actions to enforce the order would result in a mandatory award of attorney fees.

Finally, although the trial court's decision to grant the Association's motion for reconsideration impliedly included authorization to order the Merhis to refrain from violating the

Restrictions in the future, see, e.g., *Redmond*, 332 Mich App at 439 (recognizing that a court may enjoin a threatened violation and may enjoin activities that had been adjudicated to be tortious), the language used in the order went beyond merely requiring the Merhis to follow the Restrictions. The order provided that the Merhis, were "enjoined and restrained from modifying, altering, improving, or building any structures in Dearborn Hills without first obtaining written approval from the [Association]." The Restrictions do not require property owners to get the Association's approval for any and all projects involving their property; the Restrictions require approval for changes to the exterior design of the house. As such, the language in the order was too broad and did not comport with the trial court's express or implied ruling.

Finally, by the time the trial court entered the order on June 26, 2020, the Merhis could not possibly comply with the order's June 30, 2020 deadline for making the exterior design change required by the order. The trial court's decision to grant the Association's motion for reconsideration did not impliedly authorize the Association to set an impossible deadline. The trial court, therefore, should have modified the order to provide the Merhis a reasonable time to comply with its orders.

Because the trial court did not have the authority to sign a proposed order that conflicted with its oral pronouncement, see *Jones*, 320 Mich App at 261 & n 5, the trial court erred when it signed the Association's proposed order as written. See MCR 2.602(B)(3)(a). The Merhis established palpable error and showed that the trial court should have corrected the order to comport with its decision. See *Luckow Estate*, 291 Mich App at 426. The trial court, therefore, abused its discretion when it denied the Merhis's motion for reconsideration of its decision to enter the June 26, 2020 order. See *Auto-Owners*, 326 Mich App at 607. The trial court should have corrected the June 26, 2020 order to comport with its decision before signing it. MCR 2.602(B)(3)(a).

## V. DAMAGES

The Association argues on appeal that the Merhis grossly violated the requirements of MCR 7.212(J)(3)(e), and, on that basis, invites this Court to award damages under MCR 7.216(C). The Association, however, specifically states that it is not requesting damages by motion. The rules provide that a party may not request damages in this way. See MCR 7.211(C)(8). Consequently, we decline the Association's invitation. See, e.g., *Fette v Peters Constr Co*, 310 Mich App 535, 553-554; 871 NW2d 877 (2015).

## VI. CONCLUSION

For the reasons explained in this opinion, we affirm the trial court's decision to grant the Association's motions for reconsideration and summary disposition. However, we vacate the trial court's June 26, 2020 order, and remand for entry of a new order consistent with this opinion that comports with the trial court's decision to grant the Association's motions.

Affirmed in part, vacated in part, and remanded for entry of a new order granting the Association's motions. Because none of the parties prevailed in full, we order that none may tax costs. See MCR 7.219(A). We do not retain jurisdiction.

/s/ Anica Letica
/s/ James Robert Redford
/s/ Michelle M. Rick